UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BRIAN EVERETT STEVENS,

     Plaintiff,

v.                          Case No.:  3:21-cv-715-MRM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## OPINION AND ORDER

Plaintiff Brian Everett Stevens filed a Complaint on July 20, 2021.  (Doc. 1). Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits.  The Commissioner filed the transcript of the administrative proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed separate memoranda detailing their respective positions.  (Docs. 22, 23).  For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.    Social Security Act Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a

continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe, making the claimant unable to do his previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.

## II.     Procedural History

Plaintiff filed an application for a period of disability and disability insurance benefits on May 15, 2019, alleging a disability onset date of May 1, 2018.  (Tr. at 16).[1]  Plaintiff's claim was initially denied on December 9, 2019, and again upon reconsideration on May 6, 2020.  (*Id.*).  On May 13, 2020, Plaintiff filed a written request for a hearing, which was held before Administrative Law Judge ("ALJ") Robert Droker on November 12, 2020.  (*Id.* at 31-50).  The ALJ issued an unfavorable decision on November 27, 2020.  (*Id.* at 13-30).  The Appeals Council subsequently denied Plaintiff's request for review on June 1, 2021.  (*Id.* at 1-7).  Plaintiff filed his Complaint in this Court on July 20, 2021, (Doc. 1), and the parties consented to proceed before a United States Magistrate Judge for all purposes, (*see* Docs. 14, 17).  The matter is, therefore, ripe.

---

[1] The SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (Jan. 18, 2017).  The new regulations apply in Plaintiff's case because Plaintiff filed his claim after March 27, 2017.

III.     **Summary of the Administrative Law Judge's Decision**

An ALJ must follow a five-step sequential evaluation process to determine whether a claimant has proven he is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  An ALJ must determine whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2023.  (Tr. at 18).  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged onset date, May 1, 2018.  (*Id.*).  At step two, the ALJ found that Plaintiff has the following severe impairments:  "genitourinary disorder, affective disorder, and attention-deficit hyperactivity disorder (ADHD) (20 [C.F.R. §] 404.1520(c))."  (*Id.*).  At step three, the ALJ determined that Plaintiff "d[id] not have an impairment or combination of impairments that me[t] or medically equal[ed] the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1 (20 [C.F.R. §§] 404.1520(d), 404.1525 and 404.1526)."  (*Id.* at 19).

At step four, the ALJ determined that Plaintiff has the residual functional capacity ("RFC"):

> to perform medium work as defined in 20 [C.F.R §] 404.1567(c) with limitations.  The claimant must avoid ladders and unprotected heights.  The claimant must avoid the operation of heavy moving machinery.  The claimant requires a low stress job with simple tasks and no production line.  The claimant must avoid contact with the public and coworkers.  He requires tasks which do not require the assistance of others or require him to assist others in the performance of their tasks.

(*Id*. at 20).  The ALJ also determined that Plaintiff "is unable to perform any past relevant work (20 [C.F.R. §] 404.1565)."  (*Id.* at 24).

At step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 [C.F.R. §§] 404.1569 and 404.1569(a))."  (*Id.* at 25).  Specifically, the ALJ, relying on Vocational Expert ("VE") testimony, found that Plaintiff could perform work as a laundry laborer, (*Dictionary of Occupational Titles* ("DOT")# 361.687-018), a packer, agricultural produce (DOT# 920.687-134), floor waxer (DOT# 381.687-034), cleaner, housekeeper (DOT# 323.687-014), marker (DOT# 209.587-034), and routing clerk (DOT# 222.687-022).  (*Id.* at 25-26).  For these reasons, the ALJ held that Plaintiff "has not been under a disability, as defined in the Social Security Act, since May 1, 2018, through the date of this decision (20 [C.F.R. §] 404.1520(g))."  (*Id.* at 26).

**IV.     Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**V.      Analysis**

On appeal, Plaintiff raises two issues.  As stated by Plaintiff, the issues are

whether:

> 1.      The ALJ erred by failing to account for the most limiting effect of
> Plaintiff's genitourinary disorder, which he found to be a "severe
> impairment[,"] in the RFC finding; and
>
> 2.      The ALJ's "credibility" assessment is generally defective because
> of the above error, and is specifically so because of his failure to
> consider Plaintiff's stellar work history in his assessment.

(Doc. 22 at 1).  The Court addresses each issue in turn below.

**A.      Whether the ALJ Adequately Accounted for
        Plaintiff's Genitourinary Disorder.**

Plaintiff argues that "[t]he ALJ erred by failing to account for the most

limiting effect of Plaintiff's genitourinary disorder, which he found to be a 'severe

impairment[,'] in the RFC finding."  (Doc. 22 at 4 (original typeface omitted)).  In

support, Plaintiff contends that "[t]he record establishes that Plaintiff's psychogenic

polydipsia causes significant functional limitations related to frequent bathroom

use," providing record citations in support.  (*See id.* at 5-8 (original typeface omitted)

(citing Tr. at 36, 42, 319, 321, 325, 326, 327, 328, 331, 396, 528, 549, 550, 614-17)).

Plaintiff ultimately maintains that despite finding that break schedules and additional

off-time allowances can accommodate Plaintiff's frequent bathroom breaks, the ALJ

failed to include a relevant limitation in the RFC.  (*See id.* at 8-9 (citation omitted)).

Plaintiff further contends that the vocational expert's ("VE") testimony does not

render the ALJ's failure to include a relevant limitation harmless because the RFC

ultimately does not include all necessary limitations.  (*Id.* at 10-11).  Moreover,

Plaintiff argues that the ALJ's reason for finding that Plaintiff's psychogenic

polydipsia was not work-preclusive—*i.e.*, because Plaintiff's statements as to the

limiting effects of the impairment were inconsistent with his "conservative

treatment" and "extensive activities of daily living"—is not supported by substantial

evidence because Plaintiff's treatment was not conservative and his daily activities

are not inconsistent with an inability to perform full-time employment.  (*See id.* at 9-

10 (citations omitted)).

     In response, Defendant argues that substantial evidence supports the ALJ's

decision because (1) while Plaintiff testified as to the limiting effect of his

psychogenic polydipsia, the ALJ properly found that his statements were not

consistent with the medical and other evidence of record and (2) the ALJ found that

Plaintiff's bathroom breaks could be accommodated within the break schedules and

additional off-task allowances discussed by the VE.  (*See* Doc. 23 at 5-6 (citations

omitted)).  More specifically, Defendant argues that the ALJ considered Plaintiff's

statements regarding his need for bathroom breaks but ultimately found them

inconsistent with Plaintiff's daily activities and conservative treatment.  (*See id.* at 10-

11 (citations omitted)).  Similarly, Defendant maintains that the ALJ properly

considered Plaintiff's treating physician's opinion relating to the effect of Plaintiff's

psychogenic polydipsia but found it to be not persuasive because it was not

supported by treatment records or other medical evidence.  (*See id.* at 11-12 (citations

omitted)).  Defendant also asserts that the ALJ relied on the VE's testimony to find

that Plaintiff's bathroom breaks can be accommodated within break schedules and through additional off-task allowances and Plaintiff has offered no evidence to the contrary.  (*See id.* at 12-13 (citations omitted)).  Finally, Defendant argues that "[t]o the extent that Plaintiff alleges his polydipsia also caused insomnia that imposed additional limitations related to 'tiredness' and 'lack of concentration,'" the evidence of record does not support the claim.  (*See id.* at 13 (citations omitted)).[2]

An ALJ is required to determine a plaintiff's RFC.  *See* 20 C.F.R. § 404.1545(a).  The RFC is "the most" a plaintiff can do despite his physical and mental limitations.  *Id.*  To determine a plaintiff's RFC, the ALJ must use all relevant medical and other evidence in the record.  *Phillips*, 357 F.3d at 1238; 20 C.F.R. § 404.1545(e).

The Social Security Administration revised its regulations regarding the consideration of medical evidence, with those revisions applicable to all claims filed after March 27, 2017.  *See* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Because Plaintiff filed his claim on May 15, 2019, (Tr. at 16), the revised regulations apply, *see* 20 C.F.R. § 404.1520c.  The regulations require that an ALJ apply the

---

[2]  Although Plaintiff included notations that his records show that he experienced tiredness and a lack of concentration due to the psychogenic polydipsia, Plaintiff failed to proffer any argument that the ALJ failed to include a limitation related to these symptoms.  (*See* Doc. 22).  As a result, the Court deems the argument waived and need not address it.  *See N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived."); *Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 777 n.2 (11th Cir. 2016) (finding that a plaintiff's perfunctory argument was abandoned).

same factors in considering opinions from all medical sources, rather than afford specific evidentiary weight to certain sources' opinions.  20 C.F.R. § 404.1520c(a). In contrast, under Eleventh Circuit precedent, the "treating source rule" required the ALJ to afford "[t]he opinion of a treating physician . . . substantial or considerable weight unless 'good cause' is shown to the contrary."  *Phillips*, 357 F.3d at 1240 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).  However, the Eleventh Circuit recently held in a published opinion that the Social Security Administration's 2017 revised regulations abrogate the Eleventh Circuit's treating source rule.  *See Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 896 (11th Cir. 2022).  Accordingly, the revised regulations, rather than the Eleventh Circuit's treating source rule, apply in this action.  *See id.*

Under the revised regulations, as to each medical source, the ALJ must consider:  (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. § 404.1520c(c).

Supportability and consistency constitute the most important factors in any evaluation, and the ALJ must explain how those two factors are considered.  *See* 20 C.F.R. § 404.1520c(b)(2).  In assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis—the regulations themselves do not require the ALJ to explain the consideration of each opinion from the same source.  20 C.F.R. § 404.1520c(b)(1).

Overall, supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record. *See* 20 C.F.R. § 404.1520c(c)(1)-(2). Put differently, the ALJ's analysis considers whether the medical source's opinion is (1) supported by the source's own records and (2) consistent with the other evidence of record. *See Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021).

When the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the Court would have reached a contrary result as the ALJ and even if the Court finds that "the evidence preponderates against" the Commissioner's decision. *See Edwards*, 937 F.2d at 584 n.3.

Upon review, the Court finds that the ALJ's error, if any, in failing to explicitly include a limitation related to Plaintiff's frequent bathroom usage is harmless because (1) the ALJ properly considered Plaintiff's psychogenic polydipsia but found that the limiting effect of the impairment was not as severe as alleged, and (2) the VE's testimony supports the ALJ's finding that Plaintiff can perform the specified jobs.

First, the Court finds that the ALJ did not err in his assessment of the limiting effect of Plaintiff's genitourinary disorder—psychogenic polydipsia. (*See* Tr. at 20-24). In assessing Plaintiff's RFC, the ALJ broadly found that Plaintiff's medically

determinable impairments, which includes psychogenic polydipsia, "could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.* at 21).

As to the psychogenic polydipsia itself, the ALJ began assessing the impairment by noting that Plaintiff testified, *inter alia*, that he "believes he is disabled because of mental conditions and polydipsia" and that "[h]e goes to the bathroom at least every hour." (*Id.* at 20). The ALJ then considered the medical records related to the impairment. (*See id.* at 20-24). For example, the ALJ noted that Plaintiff's medical records indicate that (1) he suffers from psychogenic polydipsia, (2) there is no specific treatment for the impairment, (3) there has been no change in the impairment, and (4) Plaintiff alleges he cannot work because he needs to drink water and urinate often. (*Id.* at 22 (citing Tr. at 311-47)). Similarly, the ALJ highlighted that in February 2020, Plaintiff's records show that he was drinking two gallons of water a day and urinating often but that no specific cause for this had been found. (*Id.* at 22-23 (citing Tr. at 541-53)).

The ALJ also considered the impairment when assessing the persuasiveness of the medical opinions. (*See id.* at 22-23). For example, the ALJ considered Dr. Bolla's September 2020 medical opinion, in which Dr. Bolla opined, in relevant part, that: (1) Plaintiff's only physical impairment was psychogenic polydipsia; (2) Plaintiff would be off-task more than 25% of the time and could maintain

attention and concentration for less than 15 minutes before requiring a break; (3) Plaintiff would miss more than four days a month due to his impairments or treatment; and (4) Plaintiff's psychogenic polydipsia required frequent trips to the bathroom.  (*Id.* at 23 (citing Tr. at 613-17)).  The ALJ, however, found the opinion unpersuasive because "the off task [sic] and absence limitations are not supported by treatment records or other medical evidence of record."  (*Id.*).[3]  Additionally, the ALJ found both a December 2019 opinion and a May 2020 opinion to be not persuasive because, the ALJ found, Plaintiff's "psychogenic polydipsia causes more than a minimal effect on his ability to work."  (*Id.* at 22 (citing Tr. at 72-82, 87-99)).

After having expressly considered Plaintiff's alleged limitations due to his psychogenic polydipsia – including assessing the persuasiveness of the relevant medical opinions – the ALJ ultimately concluded that:

> The record confirms a diagnosis of psychogenic polydipsia, and indicates that the claimant has frequent bathroom needs.  The record does not establish that this condition causes work preclusive [sic] limitations.  His conservative treatment and extensive activities of daily living are not consistent with the degree of limitation suggested, and bathroom breaks can be accommodated within break schedules indicated by the [VE] and through additional off task [sic] allowances.

(*Id.* at 23).

---

[3]  Notably, Plaintiff does not specifically challenge the sufficiency or accuracy of the persuasiveness determination.  (*See* Doc. 22).  As a result, the Court deems the argument waived and need not address it.  *See N.L.R.B.*, 138 F.3d at 1422; *Jacobus*, 664 F. App'x at 777 n.2.

Upon review, the Undersigned finds the ALJ's conclusion regarding the limiting effects of Plaintiff's psychogenic polydipsia to be supported by substantial evidence.  Specifically, as noted above, the ALJ properly considered both the medical evidence and medical opinions related to this impairment.  (*See* Tr. at 20-24). The ALJ summarized the medical evidence related to the impairment and specifically determined the persuasiveness of the relevant medical opinions.  (*See id.*). Ultimately, however, the ALJ found Plaintiff's allegations as to the limiting effects of the psychogenic polydipsia to be not consistent with the evidence of record.  (*See id.* at 20, 23).  In reaching his conclusion, moreover, the ALJ properly relied on the inconsistency between Plaintiff's statements and his "conservative treatment" and "extensive activities of daily living."  (*See id.* at 23).  While Plaintiff challenges the ALJ's reliance on both grounds, (*see* Doc. 22 at 9-10), the Court is not persuaded.

As to Plaintiff's treatment, the Court highlights that before describing the treatment as "conservative," the ALJ noted that there was no specific treatment.  (Tr. at 22).  As a result, the Court finds unpersuasive Plaintiff's argument that the ALJ's reliance on Plaintiff's so-called "conservative treatment" was "faulty" given that no treatment existed.  (*See* Doc. 22 at 9-10).  Instead, the decision expressly demonstrates that the ALJ acknowledged and considered the lack of a specific treatment.  (Tr. at 22).  Thus, even if the ALJ erred in describing it as "conservative," the Court is persuaded that the ALJ properly considered the lack of treatment but ultimately determined that this undermined Plaintiff's allegations of the limiting effect.  (*See id.*).  Moreover, even if the ALJ erred in relying on Plaintiff's treatment,

13

the Court would nonetheless find the error harmless given the second proffered reason for finding that the impairment is not as limiting as alleged—*i.e.*, Plaintiff's extensive activities of daily living.  (*See id.* at 23); *see also Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).

In that regard, the Court finds that the ALJ did not err in relying on Plaintiff's daily activities to determine that Plaintiff's psychogenic polydipsia is not as limiting as alleged.  (*See* Tr. at 23).  As Defendant highlights, an ALJ may properly rely on a claimant's activities of daily living when evaluating the claimant's subjective complaints and determining his or her RFC.  *See* 20 C.F.R. § 404.1529(c)(3)(i); SSR 16-3p, 2017 WL 5180304, at *7;[4] *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987).

Here, the ALJ expressly considered Plaintiff's activities of daily living—including that he (1) rode his bicycle twice a week for thirty or more miles, (2) played hockey, (3) performed yard work, (4) went grocery shopping and out to eat, (5) drove daily, (6) intended to ski in February 2020, and (7) had been scuba diving in August

---

[4] "Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Administration." *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990)).  While Social Security Rulings are not binding on the Court, they are still afforded "great respect and deference, if the underlying statute is unclear and the legislative history offers no guidance." *Id.* (citing *B. ex rel. B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. 1981)).

2020. (*See* Tr. at 21, 23, 24 (citations omitted)). Given the diverse and extensive daily activities, (*see, e.g.*, *id.* at 39 (testifying that he rides his bike twice a week for a couple of hours, plays hockey, attends church, and grocery shops), 367 (noting that Plaintiff had "[j]ust returned" from skiing), 626 (noting that Plaintiff went scuba diving the prior week)), the Court finds that the ALJ's reliance on the activities is supported by substantial evidence. Put simply, the Court finds that the ALJ did not err in finding the extensive activities to be inconsistent with Plaintiff's subjective complaints. As a result, the Court finds that the ALJ properly considered the evidence of record when assessing Plaintiff's subjective complaints related to his psychogenic polydipsia. (*See id.* at 21, 23, 24). Moreover, because the ALJ clearly articulated and supported his assessment of Plaintiff's subjective complaints, the Court declines to disturb it here. *See Foote*, 67 F.3d at 1562 ("A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court.").

To the extent Plaintiff challenges the ALJ's finding on the basis that "[t]he ability to perform sporadic daily activities does not equate with an ability to work an eight-hour workday," (Doc. 22 at 10 (citation omitted)), the Court is not persuaded. At base, Plaintiff's argument essentially amounts to a request to re-weigh the evidence. (*See id.*). The Court declines to do so. Rather, it is the ALJ's job to evaluate and weigh evidence and to resolve any conflicts in the record. "In reviewing an ALJ's decision, [the Court] may not decide the facts anew, make credibility determination[s], or re-weigh the evidence, and [the Court] must affirm

the ALJ's findings if they are supported by substantial evidence, even if the evidence preponderates against them." *Jones v. Soc. Sec. Admin., Comm'r*, 695 F. App'x 507, 508 (11th Cir. 2017) (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel v. Comm'r., Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011)).

Ultimately, given the ALJ's express consideration of the impairment and its associated limitations, coupled with Plaintiff's failure to challenge the persuasiveness evaluation of any medical opinion, the Court finds that the ALJ's RFC assessment is supported by substantial evidence. Indeed, the ALJ properly summarized the relevant medical evidence – relating to Plaintiff's psychogenic polydipsia as well as his other impairments – and Plaintiff's activities of daily living. (*See* Tr. at 20-24). The ALJ also considered the relevant medical opinions. (*See id.*). Based on that analysis, the ALJ determined that Plaintiff could perform the work permitted by his RFC. (*See id.* at 24). As to Plaintiff's psychogenic polydipsia specifically, the ALJ determined that while the impairment causes the alleged effect, the effect is not as severe as Plaintiff suggests and, in fact, the impairment causes no work-preclusive limitations. (*Id.* at 23). The ALJ, therefore, found that Plaintiff's psychogenic polydipsia can be accommodated by normal break schedules and accepted off-task allowances. (*Id.*). Given this analysis, the Court finds that the ALJ properly

considered and accounted for the impairment and the relevant limitations, to the extent the limitations are supported by the evidence of record.  (*See id.*).[5]

Second, because the Court finds that the ALJ adequately considered Plaintiff's psychogenic polydipsia and his need for frequent bathroom breaks, the Court finds that any error by the ALJ in failing to explicitly include an associated limitation in the RFC is harmless.  Although the ALJ acknowledged Plaintiff's need for frequent bathroom breaks, (*id.* at 23), the ALJ determined that this limitation was not work-preclusive because Plaintiff could perform jobs that allowed for these bathroom breaks, despite failing to specifically include a relevant limitation, (*see id.* at 23, 24-26).

Additionally, substantial evidence supports the finding that Plaintiff could perform the specified jobs, despite his impairment.  At the hearing, the ALJ posed to the VE a hypothetical that contained all of Plaintiff's RFC limitations and asked whether a person with Plaintiff's age, work experience, education, and limitations could perform any entry level jobs.  (*Id.* at 47-48).  The VE testified that Plaintiff could perform six positions—laundry laborer, packer, floor waxer, cleaner, marker, and routing clerk.  (*Id.* at 48).  The ALJ then asked what breaks an employee would

---

[5] To the extent Plaintiff asserts that other evidence of record support additional limitations, (*see* Doc. 9 at 5-9 (citations omitted)), the Court finds the argument not persuasive.  The mere fact that other evidence of record supports a different conclusion does not require remand.  Rather, as noted above, it is the ALJ's job to evaluate and weigh evidence and to resolve any conflicts in the record, and "[i]n reviewing an ALJ's decision, [the Court] may not decide the facts anew, make credibility determination[s], or re-weigh the evidence."  *See Jones*, 695 F. App'x at 508 (citations omitted).

be given and to what extent an employer would tolerate off-task behavior.  (*Id.*).  The VE explained that "typically an employer will permit a 15-minute break after the first two hours of work, a 30-minute lunch in the middle and then a second 15-minute break towards the end of the shift" and an additional 10 percent off-task behavior within an eight-hour workday.  (*Id.*).  Following this conversation, the ALJ found that Plaintiff's frequent bathroom breaks – caused by his psychogenic polydipsia – could be "accommodated within [the] break schedules indicated by the [VE] and through additional off task [sic] allowances."  (*Id.* at 23).

Based on this evidence, the Court finds that, even if the ALJ erred by not specifically including a limitation related to Plaintiff's off-task behavior in the RFC, the error would be harmless.  *See Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) for the proposition that "[w]hen . . . an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand").  Indeed, the VE's testimony, upon which the ALJ specifically relied, demonstrates that the outcome would not change if the ALJ had included a limitation as to Plaintiff's off-task behavior.  (*See* Tr. at 47-48).  Put differently, had the ALJ included a relevant limitation, the ALJ would have nonetheless found, supported by the VE's testimony, that Plaintiff was able to perform the six specified jobs and was, therefore, not disabled as defined in the Social Security Act.  (*See id.*).  Thus, any remand to require the ALJ to make an express finding is not warranted.  *See Denomme*, 518 F. App'x at 877; *see also Sanchez*

*v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013) (noting that the Court has declined to remand "for express findings when doing so would be a 'wasteful corrective exercise' in light of the evidence of record and when no further findings could be made that would alter the ALJ's decision").

### B.   Whether the ALJ Failed to Adequately Consider Plaintiff's Subjective Complaints.

Plaintiff argues that "[t]he ALJ's 'credibility' assessment is generally defective because of the above error, and is specifically so because of his failure to consider Plaintiff's stellar work history in his assessment." (Doc. 22 at 12 (original typeface omitted)). In support, Plaintiff argues that the ALJ's credibility assessment is defective not only for the reasons inherent in Plaintiff's first argument but also because the ALJ failed to discuss Plaintiff's work history. (*See id.* at 12 (citations omitted)). Put simply, Plaintiff argues that while his work history does not "necessarily entitle[] him to enhanced credibility" or otherwise trumps other factors upon which the ALJ can rely, his work history supports his credibility and the ALJ erred in failing to consider it. (*See id.* at 13 (original typeface and citations omitted)).

In response, Defendant argues that the ALJ's decision shows that the ALJ considered Plaintiff's work history and neither the regulations nor the case law requires any articulation of the ALJ's consideration. (*See* Doc. 23 at 13-15 (citations omitted)).

To establish disability based on testimony of pain and other symptoms, a plaintiff must satisfy two prongs of the following three-part test: "(1) evidence of an

underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.3d 1221, 1223 (11th Cir. 1991)).  After an ALJ has considered a plaintiff's complaints of pain, the ALJ may reject them as not credible, and that determination will be reviewed to determine whether it is based on substantial evidence.  *Moreno v. Astrue*, 366 F. App'x 23, 28 (11th Cir. 2010) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)).  If an ALJ discredits the subjective testimony of a plaintiff, then the ALJ must "articulate explicit and adequate reasons for doing so.  Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225 (citations omitted).  "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562.

The factors an ALJ must consider in evaluating a plaintiff's subjective symptoms are:  "(1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; (5) treatment or measures taken by the claimant for relief of symptoms; and other factors concerning functional limitations." *Moreno*, 366 F. App'x at 28 (citing 20 C.F.R. § 404.1529(c)(3)).

The Court finds that the ALJ's subjective symptom evaluation is supported by substantial evidence and the ALJ did not err by failing to expressly analyze Plaintiff's work history in the context of the subjective symptom evaluation.

As an initial matter, while Plaintiff refers to the ALJ's subjective symptom evaluation as a "credibility analysis," Social Security Ruling ("SSR") 16-3p eliminated the use of the term "credibility" in the sub-regulatory policy.  SSR 16-3p, 81 Fed. Reg. 14166, 14171.[6]  SSR 16-3p stressed that, when evaluating a claimant's symptoms, the adjudicator will "not assess an individual's overall character or truthfulness" but instead "focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities."  *Id.*  SSR 16-3p clarifies that adjudicators will consider whether the "individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record."  *Id.* at 14170  The ALJ's opinion, read in context, did not assess Plaintiff's "character or truthfulness," but rather, consistent with the two-step process for evaluating symptoms, it assessed

---

[6]  Plaintiff acknowledges this change but explains that "Plaintiff will continue to use the word credibility in this section of the brief, since it is in common usage, but only means by using it the Agency's required analysis of consistency and supportability." (Doc. 21 at 19 n.3).

Plaintiff's subjective complaints and found that they conflicted with the other evidence in the record. (*See* Tr. at 21, 20-24 (citations omitted)); *see also* SSR 16-3p, 81 Fed. Reg. 14166, 14170-71; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 n.3 (11th Cir. 2018).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms, but his statements concerning the intensity, persistence, and the limiting effects of those symptoms were not entirely consistent with the medical and other evidence of record for the reasons stated in the ALJ's decision. (Tr. at 21).

The ALJ discussed Plaintiff's allegations of pain and symptoms related to Plaintiff's impairments, but contrasted these allegations with: (1) Plaintiff's medical records and treatment; and (2) Plaintiff's daily activities. (*See id*. at 21-24 (citations omitted)). After considering Plaintiff's subjective symptoms and providing an in-depth discussion and summary of Plaintiff's associated medical evidence, the ALJ concluded that Plaintiff could perform medium work activity with some limitations, consistent with the RFC finding. (*See id*. at 20-24). The Court finds, supported by the analysis above, *see* Section V.A., *supra*, that the ALJ's subjective symptom evaluation is supported by substantial evidence in the record. (*See id.*).

The Court also finds that the ALJ did not err by failing to explicitly discuss Plaintiff's work history in the context of the subjective symptom evaluation. While Plaintiff argues that "his strong work history" enhances the consistency and supportability of Plaintiff's subjective allegations, (*see* Doc. 22 at 12), the subjective

symptom evaluation is the province of the ALJ and this Court declines to disturb it in light of the substantial supporting evidence in the record cited by the ALJ.  *See Foote*, 67 F.3d at 1562; (*see also* Tr. at 20-24).

Moreover, although the ALJ did not expressly discuss Plaintiff's work history when undertaking the subjective symptom analysis, the ALJ noted Plaintiff's work history throughout his decision.  (Tr. at 21 (noting that Plaintiff previously worked as a pilot and a pilot instructor), 24 (finding that Plaintiff is unable to perform his past relevant work as a pilot or as a pilot instructor)).  The ALJ also considered Plaintiff's testimony during the hearing in which he stated that he worked as a pilot for twenty-five years and then as a pilot instructor.  (*Id*. at 36).  The record also shows that Plaintiff's certified earnings records was part of the administrative record, (*see id*. at 197-99), and the ALJ considered Plaintiff's earnings in finding that Plaintiff "acquired sufficient quarters of coverage to remain insured through December 31, 2023," (*id.* at 17).  The Court has previously found similar facts sufficient to show that the ALJ adequately considered a plaintiff's work history when conducting the subjective symptom evaluation.  *See Sickmiller v. Saul*, No. 8:19-cv-3087-SPF, 2021 WL 1186846, at *7 (M.D. Fla. Mar. 30, 2021) (collecting cases).  The Court finds no reason to reach the opposite conclusion here.

Furthermore, when an ALJ conducts a subjective symptom evaluation, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision enables the district court to conclude that the ALJ considered [the claimant's] medical condition as a whole."  *Adams v. Comm'r of*

*Soc. Sec.*, 586 F. App'x 531, 533 (11th Cir. 2014) (quotations omitted).  Put another way, the ALJ was required to *consider* all the evidence presented, including Plaintiff's work history, *see* 20 C.F.R. § 404.1529(c)(3); however, he was not required to expressly *discuss* it, *see Sickmiller*, 2021 WL 1186846, at *7-8 (rejecting the plaintiff's argument that remand is required solely for failure to explicitly discuss his work history in the context of a "credibility assessment"); *Mahon v. Comm'r of Soc. Sec.*, No. 8:16-cv-1462-T-JSS, 2017 WL 3381714, at *10 (M.D. Fla. Aug. 7, 2017) (finding that the ALJ did not err by failing to discuss a plaintiff's work history in the context of the "credibility assessment").  Ultimately, upon review of the record and as addressed above, the Court finds that the ALJ clearly considered Plaintiff's work history, even if he did not explicitly discuss it during the subjective symptom evaluation.  (*See* Tr. at 20-24; *see also* Tr. at 17, 36, 197-99).  As a result, the Court finds no error.  *See Sickmiller*, 2021 WL 1186846, at *7-8; *Mahon*, 2017 WL 3381714, at *10.

Finally, to the extent Plaintiff relies on *Lafond v. Commissioner of Social Security,* No. 6:14-cv-1001-Orl-DAB, 2015 WL 4076943, at *9 (M.D. Fla. July 2, 2015) to support his position, the Court finds the case inapposite.  Specifically, in *Lafond*, the Court remanded not on the failure to discuss Plaintiff's work history when undertaking the subjective symptom evaluation but because the subjective symptom evaluation as a whole lacked substantial evidence.  *See Lafond*, 2015 WL 4076943, at *9.  Here, the Court finds that the subjective symptom evaluation as a whole is supported by substantial evidence and, therefore, finds *Lafond* inapposite.  *See*

*Sickmiller*, 2021 WL 1186846, at *8. Additionally, reaching the opposite conclusion would depart from binding precedent that requires that the Court defer to a clearly articulated and supported credibility finding. *See Rios v. Acting Comm'r of Soc. Sec.*, 8:16-cv-152-T-PDB, 2017 WL 4216467, at *10 (M.D. Fla. Sept. 22, 2017) (distinguishing *Lafond* and cases cited in *Lafond* because they were "inconsistent with binding precedent requiring deference to a 'clearly articulated credibility finding with substantial supporting evidence'" (quoting *Foote*, 67 F.3d at 1562)).

In sum, the Court finds that the ALJ considered the entire record of evidence and appropriately found it inconsistent with Plaintiff's subjective complaints of pain. (*See* Tr. at 20-24). Accordingly, the ALJ's subjective symptom determination is supported by substantial evidence and the ALJ's decision is due to be affirmed as to this issue.

## VI.    Conclusion

Upon consideration of the parties' submissions and the administrative record, the Court finds that the ALJ's decision is due to be affirmed. Accordingly, the Court **ORDERS** that:

1.    The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

2.    The Clerk of Court is directed to enter judgment accordingly, to terminate any pending motions and deadlines, and to close the case.

**DONE AND ORDERED** in Tampa, Florida on February 1, 2023.

_____
Mac R. McCoy
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties